THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. LEMUEL ABBOTT.

1. CONDEMNATION PROCEEDINGS; *Map, Profile, and Notice; Filing.* The map, profile and notice required by ¶¶ 1208 and 1209 of the General Statutes of 1889 need not be given or filed prior to the commencement of proceedings for condemnation of the right-of-way for a railroad company. (*Gulf Rld. Co. v. Shepard,* 9 Kas. 647, cited, and followed.)

2. CERTIFIED REPORT, *Failure to File; Right-of-Way; Occupation, Not Prohibited.* In an action brought by the land-owner for damages on account of the company taking possession of and occupying a right-of-way for its road over the land wrongfully and without the consent of the owner, the company justified under condemnation proceedings. The trial court excluded the proceedings for the reason, among others, that a certified copy of the report of the commissioners had not been filed within ten days after being certified to as prescribed by ¶ 1393, General Statutes of 1889. It appeared that the report of the proceedings of condemnation was filed in the office of the county clerk on April 28, 1886; that a copy thereof was prepared by the county clerk, and filed in the office of the treasurer of the county on April 29, 1886; that the railroad company caused to be paid to the treasurer, on the same day, the amount in full of the appraisement, in accordance with the report, and that a certified copy of the report was filed in the office of the register of deeds on December 13, 1886, before any action was commenced for damages by the land-owner. *Held,* That the failure to file the certified report within ten days, in the office of the register of deeds, did not invalidate the proceedings, or prohibit occupation of the land for its right-of-way by the railroad company.

*Error from Sedgwick District Court.*

LEMUEL ABBOTT brought an action in the district court of Sedgwick county, against the *Chicago Kansas & Western Railroad Company,* and in his amended petition, filed March 21, 1887, he stated in substance:

"1. That he had been for more than a year past the legal owner and in the exclusive possession of the southeast quarter of section 32, township 29 south, range 4 west, in Sedgwick county, Kansas; that during all of that time he had used and occupied said land incessantly as a homestead and

place of residence for himself and family; that the defendant, the Chicago, Kansas & Western Railroad Company, is, and since the 31st day of May, 1886, has been, a corporation duly and legally incorporated and doing business within the state as a railroad corporation under the laws of the state of Kansas; that in the month of July, 1886, said defendant, by its employés and servants, forcibly, wrongfully, and without the consent of plaintiff, and against his protest, entered upon said land and constructed its line of railroad, and in process thereof making upon said land along said line of railroad large embankments and excavations, and trampled down and destroyed the crops and grass of plaintiff growing on said land; that about August 1, 1886, said defendant completed said line of railroad and commenced to operate the same by running thereon daily trains, carrying on a general business and railroad traffic through plaintiff's land; and that it has ever since and does now continue; that by reason of the aforesaid acts of defendant, plaintiff has sustained damage to his land in the sum of nine hundred dollars, the damage consisting in inconvenience in being compelled to cross and recross said railroad in going to and from his farm, pasture, and stock-water, all of which are located on said land, and separated from his dwelling by said railroad, thus causing a depreciation in the actual value of said land in the sum of $900.

"2. Plaintiff says that defendant, in constructing said line of railroad and operating the same as set forth, without plaintiff's consent and against his protest, forcibly took possession of and appropriated to its own use and still retains ten acres of plaintiff's said land of the value of $25 per acre, thus causing a damage to plaintiff in the sum of $250.

"3. Plaintiff says that the defendant in the construction of said railroad trampled down and destroyed along said railroad, against plaintiff's will, grass and corn to the amount of fifteen acres, and of the value of fifty dollars, to which amount plaintiff has sustained damage from the hand of the defendant; further, that for more than a year prior to the commencement of this action, he has been an actual occupant of said land, and was never by said defendant, or any other person or corporation whatsoever, given any written notice of the proposed construction of said railroad or of the commencement of work upon the same, or in any manner relating thereto as provided by law; that plaintiff has never been allowed by any person or corporation, or by said defendant, any sum whatever for his land so appropriated for any damages sus-

tained by him as aforesaid; that no proceedings whatever were taken for the construction of said railroad until the year 1886. Plaintiff demands judgment in the sum of $1,200, and costs of suit."

In its answer, the defendant set up:

"1. A general denial; secondly, that the Chicago, Kansas & Western Railroad Company was formed by consolidation of the Leroy & Western Railway Company, and several other companies, the agreement of consolidation being duly ratified and filed in the office of the secretary of state of the state of Kansas, the agreement being entered into on the 1st day of June, 1886; that the Leroy & Western Railway Company was, at the time stated, and prior to June 1st, 1886, a railroad company duly organized and existing under the laws of the state of Kansas, and authorized to build a line of railroad through Sedgwick county, Kansas, and that on the 15th day of March, 1886, it made application to the Hon. T. B. Wall, judge of the district court of Sedgwick county, for the appointment of commissioners to appraise lands along the line of its railroad, and make appraisement and assessment of damages for lands taken as a right-of-way, &c., as required by law, and the judge appointed three commissioners as required by law; that said commissioners gave due notice as required by law; that on the 26th day of April, 1886, in pursuance of such notice, they proceeded to view, survey and assess damages for a right-of-way through the land described in plaintiff's petition, and damages to the land not taken, and damages to the crops on said land, in the aggregate sum of $141.50; that the report of said commissioners was filed and recorded in the office of the county clerk of said county on the 29th day of April, 1886; and on said day the said the Leroy & Western Railway Company deposited said sum of $141.50 with the county treasurer of said county for the owners of said land; that the application and appointment of said commissioners were duly recorded in the office of the register of deeds of said county on the 15th day of March, 1886; that said award for damages to said land has never been set aside, vacated, or appealed from; and is in full force and effect."

To this the plaintiff in reply filed a general denial, not supported by affidavit. At the trial the plaintiff's evidence tended to prove that he was the owner of the premises at the time of the appropriation of the right-of-way by the Leroy

& Western Railway Company, and at the time of the commencement of this suit, and that he was in possession at the time the Leroy & Western Railway Company constructed its line of railroad across his said premises, and had for a long time prior thereto continuously occupied said premises as a homestead and place of residence; that the permanent location of said railroad had depreciated the value of the land in the sum found in the general and special verdicts; that plaintiff's farm was not fenced at the time of the appropriation of the right-of-way across it; that the plaintiff was never given written notice by said defendant or any other person whomsoever of the proposed construction of said railroad, or the commencement of work on the same. Plaintiff also introduced evidence tending to prove each and every item and element of damage found in the special verdict, and that the Leroy & Western Railway Company had been consolidated with the Chicago, Kansas & Western Railroad Company, and that the latter company by the articles of consolidation assumed all the liabilities and obligations of the former.

Defendant in its testimony first offered in evidence the articles of agreement consolidating the Chicago, Kansas & Western Railroad Company, the Leroy & Western Railway Company, and other railway companies, under the corporate name of The Chicago, Kansas & Western Railroad Company. These articles of agreement recited, among other things, that the Leroy & Western Railway Company was duly chartered under the laws of Kansas, as will appear by its charter filed with the secretary of state of the state of Kansas, on the 22d day of November, 1885. The articles of consolidation appear in the record, and from the certificate of the secretary of state appear to have been filed in his office on May 31, 1886. Thereupon the defendant offered in evidence the condemnation proceedings of the Leroy & Western Railway Company filed in the office of the county clerk of Sedgwick county, the same being the report of the commissioners, and the map and profile of the Leroy & Western railway as located through the premises in question. It was admitted by the plaintiff

that the documents were from the files of the county clerk of
Sedgwick county, and what they purport to be on their face,
and that the facts set forth in the certificate of filing were true.
These documents were read in evidence. From them it ap-
pears that the Leroy & Western Railway Company, by its
president, applied to Hon. T. B. Wall, judge of the district
court of Sedgwick county, Kansas, for the appointment of
three commissioners to lay off a route and make appraisement
and assessment of damages, and upon the 16th day of March,
1886, said judge appointed three commissioners, each a free-
holder and resident of said county, as commissioners to lay
off a route as required by law, through said county; this was
recorded in the office of register of deeds of said county March
22, 1886. The commissioners took their oath of office, and
on the 18th day of March, 1886, caused a notice to be pub-
lished in the Wichita *Weekly Beacon.* In this notice they
specified the time and place when they would proceed to lay
off a route for said railroad company and make assessment and
appraisement of damages. This notice was published for thirty
days before the time fixed for proceeding to lay off said route;
that at the time fixed, to wit, April 26, 1886, at the time and
place specified, they proceeded to lay off said route and make
assessment and appraisement of damages, as required by law;
the report of the commissioners was signed by them April 27,
1886. In this report they showed that they laid off a right-
of-way over all the land within fifty feet of the center line of
railroad over the southeast quarter of section 32, township 29
south, range 4, designating as the probable owner, Abbott;
the amount of land taken as $6\frac{7}{100}$ acres; the value of the
land taken as $91.50; the amount of damage to the land
not taken, $45; damage to the crops, $5; total, $141.50.
This report was filed in the office of the county clerk on April
28, 1886; and upon the report is indorsed the certificate of
the county treasurer to the effect that he received from the
Leroy & Western Railway Company the sum of $4,210.50.
for payment for the right-of-way described in the above report,
29th day of April, 1886. This instrument was subsequently

recorded in the office of the register of deeds of Sedgwick county, Kansas. Defendant also introduced in evidence the map and profile filed in the office of the county clerk, and which was filed there on March 18, 1886. This shows the line of railroad through the land above described. It was thereupon admitted by the plaintiff that the sum of $141.50, the amount of the award made by the commissioners for the plaintiff, was deposited with the county treasurer of Sedgwick county for plaintiff at the time this report was filed.

The jury returned a verdict in favor of Abbott for the sum of $740.95. The jury also found in their special verdict among other things the following: They allowed plaintiff for the land actually taken by the railroad company, $133.55; that $6\frac{7}{100}$ acres were appropriated, and were worth $22 per acre. They allowed plaintiff for the grass and corn destroyed by the defendant, $7.40; that $\frac{9}{16}$ of an acre of corn and $5\frac{3}{5}$ acres of grass were destroyed by the defendant; that the value of the corn destroyed was $6, and the grass $1.40. Further, they allowed as the total amount of damages for inconvenience in crossing and recrossing the railroad in going to and from his farm, pasture, and stock-water, the sum of $400; that the actual value of the quarter-section prior to the construction of the road was $3,200, and the value of the same after the construction of the railroad was $2,459.05. They allowed plaintiff, by reason of the construction of the railroad between his residence on the one side and his stock-water and pasture on the other, the sum of $200; further, that the defendant built its road over and across plaintiff's premises and appropriated a part of the same to its own use at the time in question, against the consent and will of plaintiff; that plaintiff was the actual occupant of the land at the time of the construction of the railroad. They did not know how long before the commencement of the construction of the railroad plaintiff had actual knowledge that defendant was preparing to construct its said road; that the damages which they found the plaintiff was entitled to recover are estimated for a continual and permanent appropriation of plaintiff's land by the

defendant to its own use.  The jury further found that the railroad company took possession of the land with the intent to permanently occupy the same for the purposes of its railroad; that the Leroy & Western Railway Company, at the time of the first publication of notice given by the commissioners appointed, made an actual and open location of its railroad on the line across plaintiff's land in controversy in this suit, on which the defendant subsequently built its road; that the Leroy & Western Railway Company or the defendant did not at any time prior to the commencement of the construction of the railroad over plaintiff's land give the plaintiff written notice of its intention to construct its railroad over said land.  The motion for a new trial filed by the defendant was overruled by the court.  The *Railroad Company* brings the case here for review.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*John A. Murray,* and *C. Everest Elliott,* for defendant in error.

Opinion by SIMPSON, C.: The first error assigned by the railroad company for reversal is the ruling of the court excluding from the consideration of the jury the condemnation proceedings which were offered as a bar to the action.  It is asserted in the brief of counsel for the defendant in error that these proceedings are void for the following reasons: First. No written notice, as provided by § 49, ch. 23, Comp. Laws of 1885, was given to Abbott, who at the time of the construction of the road and for some time prior thereto had occupied the land as a homestead for himself and family. That section provides: "All companies shall give written notice to all actual occupants of the land over which the right of road is so designated, and which has not been purchased by or donated to the corporation."

The exact question presented by this contention was decided by this court in the case of *Gulf Rld. Co. v. Shepard,* 9 Kas.

647.    Shepard brought an action against the Gulf Railroad Company for certain alleged trespasses.    The railroad company answered, and among other defenses justified under condemnation proceedings.    At the trial the presiding judge excluded them, and held that they were void, the principal objections being that they did not show the service of a written notice on the actual occupant, and that a map and profile of the route had been filed in the office of the county clerk.    The conclusion of this court was, that the notice, map and profile need not be given or filed prior to the commencement of the proceedings for condemning the right-of-way.    Hence these things do not vitiate the condemnation proceedings.

1. Condemnation proceedings; map, profile, and notice; filing.

Second.  Because the land of the plaintiff below was not properly described.    In the copy of the report of the commissioners to make the award it is described as the southwest quarter; the map on file describes it as the southeast quarter of section 32, township 29, range 4.    The commissioners were on the land, and saw Abbott, who pointed out the lines of his quarter-section; he describes it in his petition as the southeast quarter, and the description in the report may be properly regarded as a clerical error.

Third.  All these proceedings are fixed by the record in the county of Sedgwick, and it sufficiently appears that both the land and the condemnation proceedings were all located in that county.

Fourth.  The description of the land taken is definite and certain enough, according to the case of *Hunt v. Smith,* 9 Kas. 137.

Fifth.  Because the defendant never caused to be filed in the office of the register of deeds of Sedgwick county a certified copy of the commissioners' report, as required by § 84, ch. 23, Comp. Laws of 1885.

The fact is that a certified copy of the report was filed in the office of the register of deeds on the 13th day of December, 1886, but this was after the time fixed by statute. We cannot see how this would affect the defendant in error,

12—44 KAS.

but it is plain that it might affect the rights of third parties if they intervened intermediate the expiration of the ten days and the date of the actual filing. So far as the defendant in error is concerned, the important date to him was the time of filing the report of the commissioners in the county clerk's office, as his appeal must be taken within ten days after that filing. The defendant in error contends that the filing of the certified report in the office of the register of deeds, is a condition precedent to the right to occupy and use the same for railroad purposes. There is no authority cited to sustain such a claim, and it seems to us to be a very strict and inequitable construction of the section. After the report of the commissioners is filed with the county clerk, it is made the duty of that officer to prepare and file with the county treasurer a copy thereof. If the railroad company, within ninety days from the filing of the copy with the county treasurer, shall pay the full amount of the appraisement, the county treasurer must certify the fact of payment upon the copy of the report under his hand and seal. It is the copy of the report thus certified that the railroad company is required to file for record in the office of the register of deeds. The failure of the railroad company to file a certified copy of the commissioners' report with the register of deeds within the time prescribed by the statute did not in this case injuriously affect the landowner, or prejudice his rights in any way. Under the circumstances, we should hesitate to give the section the construction urged. We find no case in point. The nearest approach to an analogous proposition is the decisions of the supreme court of the United States in the cases of *Londsdale v. Daniels*, 100 U. S. 117, and *Johnson v. Towsley*, 13 Wall. 73. These two cases hold, that notwithstanding the preëmption laws require a declaratory statement to be filed by the claimant within three months from the time of settlement, yet it is valid if made within any time before another party commences a settlement or files a declaration. Our statutes require chattel mortgages to be filed forthwith for record; but this is held to be for the protection of creditors and third parties, and the

mortgage is valid as between the parties without record. Again, it has been repeatedly declared by this court, that after the award of commissioners has been filed with the county clerk, and the amounts named therein deposited with the county treasurer, the amount of compensation becomes conclusive, unless either party appeals from the award within ten days. The requirement of the constitution of the state is, that compensation be first made, or secured by a deposit of money, before occupation by the railroad companies, and we do not believe that the legislature intended by this provision to add to these a record of the proceedings in the register's office, before railroad companies should commence the work of permanent construction; at least these considerations influence us not to adopt in this case the strict construction of § 84 applied by the trial court. In all other respects the condemnation proceedings seem to conform strictly

2. Certified report, failure to file; right-of-way; occupation, not prohibited.

to the requirements of the statute, and we think the court committed material error in excluding the record. For this error we recommend that the judgment of the district court be reversed, and the cause remanded, with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.