Daniel **COLCHICO** et al., Plaintiffs,

v.

The **UNITED STATES**, Secretary of Defense Clark Clifford and Secretary of the Navy Paul Ignatius, Defendants.

**BAY POINT PROJECTS, INC.**, on behalf of itself and all other similarly situated property owners of the 5,021 acres located in and around the unincorporated community of Port Chicago, California, Plaintiff,

v.

**UNITED STATES** of America, Secretary of Defense Clark Clifford and Secretary of the Navy Paul Ignatius, Defendants.

Nos. 49106, 49118.

United States District Court
N. D. California.
May 23, 1968.

Layne, Brodie & Germino, Palo Alto, Cal., for Colchico and others.

Belli, Ashe, Ellison, Choulos, Cone & Harper, San Francisco, Cal., for Bay Point Projects, Inc.

Rodney Hamblin, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

The above actions have been brought by residents of the unincorporated town of Port Chicago to obtain preliminary and permanent injunctions enjoining the Secretary of the Navy from acquiring certain real property under Public Law 90–110, 81 Stat. 279, 288 (1967); (The Military Construction Act of 1968).

Under Public Law 90–110 the Secretary of the Navy is about to acquire some 5,021 acres of land within a radius of approximately two miles from the pier behind the ammunition loading facility of the Naval Station, a potential source of explosion, in order to create a buffer safety zone around the station.

The land to be acquired includes the unincorporated town of Port Chicago with a community of about 800 people.

Plaintiffs contend: (1) that Public Law 90–110 is unconstitutional in that it denies plaintiffs equal protection of the law, pointing out that the plan of acquisition excludes from the taking three chemical plants within the general area; (2) that the taking is unreasonable and arbitrary in that it includes a town of 800 people without providing for adequate relocation of these residents under comparable town conditions; (3) that defendants are estopped by their previous conduct from asserting their authority to acquire the lands in question; (4) that the purpose of the legislation is to prevent activities of anti-Vietnam war demonstrators who have been picketing the existing Port Chicago Naval Base situate near the town, as a symbol for their opposition to the Vietnam war.

The government moves to dismiss the actions on the ground that they are in effect suits against the sovereign United States upon causes of action to which the United States has not given its consent to be sued, relying upon Delaware Valley Conservation Association v. Resor, 269 F.Supp. 181 (Pa.1967), affirmed in 392 F.2d 331 (3rd Cir. March 8, 1968) holding that similar actions, although nominally directed against defendant public officials, are really directed against the sovereign United States which has not given its consent to be sued. See also, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

Plaintiffs, however, contend that this rule should not be applied in the present case because the rule is subject to the exception that a suit may properly be directed at the public officer when his action is allegedly taken either (1) without statutory authority, or (2) under an unconstitutional statute.

So far as statutory authority is concerned, the complaints in both cases (in No. 49016, para. Seventh and Eighth; in No. 49118, para. IX, X, XII) expressly allege and, therefore, admit that the taking here in question is within the provisions of Public Law 90–110.[1]

The issue presented, therefore, is not whether the Secretary is acting within the terms of the legislation, but whether the legislation authorizing this particular acquisition is on its face unconstitutional.

Concerning constitutionality, the court concludes that plaintiffs' contentions on that ground are without merit.

The taking of private property for public use is an inherent right of government. The only issue reviewable by the court is whether the use for which the property is taken under Act of Congress is for a public purpose. The taking of the land here involved as appurtenant to the military purposes of the Naval Station is obviously for a public purpose.

This being the case, the necessity for the taking and the particular area of property to be taken rest within the Congressional judgment, subject only to the constitutional requirement that just compensation for property taken must be paid. United States v. Certain

1. Public Law 90–110 provides only in general terms an authorization for establishment or development of "military installations and facilities by acquiring, constructing, converting, rehabilitating or installing permanent or temporary public works, including site preparation, appurtenances, utilities and equipment for * * * [the] Naval Weapons Station, Concord, California: Operational facilities, utilities and ground improvements, and real estate $20,079,000". The Court, however, takes judicial notice of 10 U. S.C. § 2662 which establishes the procedure under which a plan for each authorized project must support agreement between the Secretary and the Committees on Armed Services of the Senate and House of Representatives before acquiring real property. The complaints in these cases reflect the details of the plan for the project upon which the agreement between the Secretary and these Committees is based.

Real Estate etc., 217 F.2d 920, 924 (6th Cir. 1954).

Whether the property of any of the three chemical plants was needed for, or appropriate to the public purpose is a matter which the Congress considered and, acting within its power, negatively resolved after balancing factors of safety and cost.

■ That the factor of cost may be considered is well settled. United States ex rel. Tennessee Valley Authority v. Welch, 327 U.S. 546, 554, 66 S.Ct. 715, 90 L.Ed. 843 (1946).

■ A reasonable determination concerning what property should be taken and what property should be excluded is not a denial of the equal protection of the laws. This court cannot say that the Congressional determination was arbitrary or not reasonably related to the Congressional purpose.

■ Although in certain statutes, for example, 33 U.S.C. 633, dealing with acquisition of water projects, the Congress has specifically authorized payment for extensive relocation of public facilities, such a provision is not a constitutional requisite for taking property. According to the legislative history behind Public Law 90–110 the Congress considered the need for such a provision but determined that payment for moving expenses of dislocated residents under the Resettlement Act, 10 U.S.C. § 2680, was sufficient for this particular acquisition.

■ The affected property owners have their right to raise in eminent domain actions, not only defenses concerning compensation, but also defenses concerning public purpose and statutory authorization. Non-property owner residents, however, have no further remedy beyond acceptance of the moving expenses provided by the Resettlement Act.

It may be that in an acquisition of this kind, hardship and distress of non-property residents in relocating themselves away from the community of their choice could have and should have been given more adequate amelioration in the statute. Personal distress is as important, indeed more important, than property concerns. However, absent a substantial constitutional issue or an issue of lack of statutory authority of the defendant public officials, this court has no power to aid the non-property residents.

■ Concerning plaintiffs' contention that the purpose of the legislation was to eliminate anti-Vietnam picketing of the Naval Station, this Court has no power to consider mere possible motivation of the Congress for its legislative action. Indeed, there is no basis in the record for finding that such was the motive. Rather, the record indicates that expansion of the Naval Base was authorized, among other reasons, because there exists a great danger to nearby residents from explosion of ammunition handled at the Station.

■ Concerning plaintiffs' claim of estoppel based upon the contention that public officials had lulled the residents of the area into a belief that the area would not be taken by the government, the record does not support such a finding. Further, the right of the United States to acquire the lands cannot be lost by estoppel or laches. United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); Jones v. United States, 195 F.2d 707, 709, 13 Alaska 629 (9th Cir. 1952).

■ Since the court finds that no substantial constitutional issue is presented, the convening of a three judge court under Title 28 U.S.C. §§ 2282–2284 is not required. Wicks v. Southern Pacific Co., 231 F.2d 130 (9th Cir. 1956); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1961); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

Nor is there any reason to determine whether civil action No. 49118 can be properly maintained as a class action since the court concludes that, for the reasons above set forth, the defendants'

motions to dismiss both actions must be granted.

Counsel for plaintiff argue, and counsel for the government concedes, and the court agrees, that this acquisition disruptively affects many property owners and residents of the town of Port Chicago. It was for this very reason that the Congressional determination was made only after consideration of vigorous protests and considerable debate.

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is denied and defendants' motion to dismiss the action is granted.

This Memorandum of Decision will constitute the Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.